1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

| | | |
|---|---|---|
| RACHEE A. WILLIS | ) | Civil No. 11cv01683 LAB(RBB) |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **GRANTING IN PART AND DENYING** |
| v. | ) | **IN PART DEFENDANTS' MOTION TO** |
| | ) | **DISMISS [ECF NO. 15]** |
| MCEWEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

17      Plaintiff Rachee Willis, a state prisoner proceeding pro se

18  and in forma pauperis, filed a Complaint on July 25, 2011 [ECF Nos.

19  1, 3], and a First Amended Complaint nunc pro tunc to November 23,

20  2011 [ECF No. 5], pursuant to 42 U.S.C. § 1983.  Willis claims that

21  the Defendants violated his Eighth Amendment right to be free from

22  cruel and unusual punishment while he was incarcerated at

23  Calipatria State Prison ("Calipatria").  (First Am. Compl. 1, 3-4,

24  10-11, ECF No. 5.)

25      On May 21, 2012, Defendants Cerros, Navarro, Landeros, and the

26  California Department of Corrections and Rehabilitation ("CDCR")

27  filed a Motion to Dismiss Plaintiff's First Amended Complaint,

28  along with a memorandum of points and authorities [ECF No. 15].

The Defendant CDCR argues that it should be dismissed because it is entitled to Eleventh Amendment immunity.  (Mot. Dismiss Attach. #1 Mem. P. & A. 4, ECF No. 15.)  Individual Defendants Cerros, Navarro, and Landeros argue that Willis fails to allege facts sufficient to state a claim that they were deliberately indifferent to Plaintiff's safety.  (Id. at 6-8.)

Plaintiff filed an untimely "Motion to Deny Defendants' Motion to Dismiss First Amended Complaint" on June 26, 2012, which the Court construes as an Opposition [ECF No. 17].[1]  Willis contends that Defendant CDCR cannot avail itself of Eleventh Amendment immunity because its conduct falls into an exception; as to the remaining Defendants, Plaintiff insists that he has alleged they were deliberately indifferent because they acted recklessly. (Opp'n 2-4, ECF No. 17.)[2]  No reply was filed by Defendants.

The Court has reviewed the First Amended Complaint and attachments, Defendants' Motion to Dismiss and attachment, and Plaintiff's Opposition.  The Motion to Dismiss is suitable for resolution on the papers.  See S.D. Cal. Civ. R. 7.1(d)(1).  For the reasons stated below, the Defendants' Motion should be **GRANTED in part** and **DENIED in part**.

<h1 style="text-align:center">I.  FACTUAL BACKGROUND</h1>

Willis pleads that on October 19, 2010, officials initiated an "emergency recall" from the recreation yard due to poor visibility

---

[1]  Because the First Amended Complaint and the Opposition are not consecutively paginated, the Court will cite to these filings using the page numbers assigned by the electronic case filing system ("ECF").

[2]  The Court permitted Plaintiff to file an amended opposition because it appeared that some of the pages in the original brief were omitted [ECF No. 19].  Willis did not file another brief.

caused by rain.  (First Am. Compl. 8, ECF No. 5.)  Two officers who
are not Defendants were patting down inmates outside of building A-
1, and Defendants Landeros and Cerros were conducting boot checks
at the "podium."  (Id.)  Plaintiff maintains that while waiting for
his boot check, a prisoner in "upper C-section" called his name.
(Id.)  When he looked to see who it was, he noticed only Black
inmates were being placed back in their cells – except the building
porter – whereas Hispanic inmates were allowed to stand in front of
their cells, unsecured.  (Id.)  According to Willis, this was
"extremely unusual" because the "normal procedure" is for officers
to cell inmates one building section at a time, as opposed to one
race at a time.  (Id.)  "[I]n my 5 years at this prison I've never
seen [this] before and because it is common knowledge that such
circumstances are ideal for riots where in a single race of inmates
have the tactical advantage of numbers over another or the unified
co-operation [sic] to commit to mass disturbances against
correctional staff."  (Id.)  Defendant Navarro was purportedly in
the "A-1 control tower," and he decided to cell only Black inmates.
(Id. at 2.)

Willis urges that as soon as he stepped in front of the "staff
office door," Defendants Cerros and Landeros ran out of the
building to assist with a riot in the recreation yard; a large
group of prisoners ran out with the Defendants to attempt to
participate in the riot.  (Id. at 8-9.)  Defendant Navarro closed
the building door after realizing that inmates were running out to
join in the riot.  (Id.)  One of the Hispanic inmates had yelled
something in Spanish, and a large group ran toward the metal

detector where two Black inmates were putting on their boots. (See id.)

Plaintiff alleges that when he realized the Hispanic inmates were attacking the Black prisoners, three Hispanic inmates ran toward him and "everything went black for a moment." (Id. at 9.) Willis was purportedly attacked by approximately forty Hispanic prisoners with weapons for ten minutes; he was hit with the "base of a large telephone" and a "large stick." (See id.) At some point during the riot, Plaintiff lost consciousness and was found lying in a pool of his blood while medical personnel assisted him. (See id.) He told the medical staff that his head, face, and left lung hurt. (Id.) Willis was taken to a medical facility and given a tetanus shot and antibiotics; he was also informed that the puncture wound to his face "would probably need stitches." (Id.)

Defendants Landeros and Cerros allegedly failed to secure the building's equipment locker and center podium before the "first or second voluntary inlines" from the recreation yard. (Id.) Prison procedures require officers to secure these areas to prevent inmates from using a "mop and broom sticks and shaving razor blades" as weapons. (Id.) Willis further submits that after the incident and while prisoners were being interviewed, Defendant Landeros apologized to the Black inmates saying, "'I'm so sorry, I had no idea [the Hispanic prisoners] were going for you guys, we thought they were going to fight each other.'" (Id.) According to Plaintiff, this shows that Landeros and other officers knew that a "mass altercation" was about to transpire. (Id.) Plaintiff insists that it was later discovered "that the tower officer in

building A-3" only let Black inmates into their cells but left
Hispanic prisoners unsecured in the building.  (Id. at 10.)

In count one, Willis argues that Defendants Landeros, Cerros,
and Navarro violated his Eighth Amendment rights by failing to
protect him.  (Id.)  These Defendants knowingly neglected to secure
the equipment locker and razor cabinet.  (Id.)  Also, they
intentionally permitted only Black prisoners to enter their cells,
contrary to prison procedures.  (Id.)  Willis maintains that
Defendants left him in a building with forty to fifty unrestrained
Hispanic prisoners outside of their cells, although the Defendants
anticipated a riot.  (Id.)  In count two, Plaintiff alleges that
Defendant CDCR has authorized widespread practices that violate the
Eighth Amendment and caused Willis harm.  (Id.)

## II.  LEGAL STANDARDS

### A.   Motions to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim pursuant to
Federal Rule of Civil Procedure 12(b)(6) tests the legal
sufficiency of the claims in the complaint.  See Davis v. Monroe
County Bd. of Educ., 526 U.S. 629, 633 (1999).  "The old formula --
that the complaint must not be dismissed unless it is beyond doubt
without merit -- was discarded by the Bell Atlantic decision [Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007)]."  Limestone
Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 803 (7th Cir. 2008).

A complaint must be dismissed if it does not contain "enough
facts to state a claim to relief that is plausible on its face."
Bell Atl. Corp., 550 U.S. at 570.  "A claim has facial plausibility
when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the

1  misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

2  The court must accept as true all material allegations in the

3  complaint, as well as reasonable inferences to be drawn from them,

4  and must construe the complaint in the light most favorable to the

5  plaintiff. Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973

6  (9th Cir. 2004) (citing Karam v. City of Burbank, 352 F.3d 1188,

7  1192 (9th Cir. 2003)); Parks Sch. of Bus., Inc. v. Symington, 51

8  F.3d 1480, 1484 (9th Cir. 1995); N.L. Indus., Inc. v. Kaplan, 792

9  F.2d 896, 898 (9th Cir. 1986).

10      The court does not look at whether the plaintiff will

11  "ultimately prevail but whether the claimant is entitled to offer

12  evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232,

13  236 (1974); see Bell Atl. Corp. v. Twombly, 550 U.S. at 563 n.8. A

14  dismissal under Rule 12(b)(6) is generally proper only where there

15  "is no cognizable legal theory or an absence of sufficient facts

16  alleged to support a cognizable legal theory." Navarro v. Block,

17  250 F.3d 729, 732 (9th Cir. 2001) (citing Balistreri v. Pacifica

18  Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

19      The court need not accept conclusory allegations in the

20  complaint as true; rather, it must "examine whether [they] follow

21  from the description of facts as alleged by the plaintiff." Holden

22  v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation

23  omitted); see Halkin v. VeriFone, Inc., 11 F.3d 865, 868 (9th Cir.

24  1993); see also Cholla Ready Mix, Inc., 382 F.3d at 973 (quoting

25  Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir.

26  1994)) (stating that on a Rule 12(b)(6) motion, a court "is not

27  required to accept legal conclusions cast in the form of factual

28  allegations if those conclusions cannot reasonably be drawn from

1  the facts alleged[]").  "Nor is the court required to accept as

2  true allegations that are merely conclusory, unwarranted deductions

3  of fact, or unreasonable inferences."  <u>Sprewell v. Golden State</u>

4  <u>Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).

5       In addition, when resolving a motion to dismiss for failure to

6  state a claim, courts may not generally consider materials outside

7  of the pleadings.  <u>Schneider v. Cal. Dep't of Corr.</u>, 151 F.3d 1194,

8  1197 n.1 (9th Cir. 1998); <u>Jacobellis v. State Farm Fire & Cas. Co.</u>,

9  120 F.3d 171, 172 (9th Cir. 1997); <u>Allarcom Pay Television Ltd. v.</u>

10 <u>Gen. Instrument Corp.</u>, 69 F.3d 381, 385 (9th Cir. 1995).  "The

11 focus of any Rule 12(b)(6) dismissal . . . is the complaint."

12 <u>Schneider</u>, 151 F.3d at 1197 n.1.  This precludes consideration of

13 "new" allegations that may be raised in a plaintiff's opposition to

14 a motion to dismiss brought pursuant to Rule 12(b)(6).  <u>Id.</u> (citing

15 <u>Harrell v. United States</u>, 13 F.3d 232, 236 (7th Cir. 1993)).

16 **B.   <u>Standards Applicable to Pro Se Litigants</u>**

17      Where a plaintiff appears in propria persona in a civil rights

18 case, the court must construe the pleadings liberally and afford

19 the plaintiff any benefit of the doubt.  <u>Karim-Panahi v. Los</u>

20 <u>Angeles Police Dep't</u>, 839 F.2d 621, 623 (9th Cir. 1988).  The rule

21 of liberal construction is "particularly important in civil rights

22 cases."  <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992).

23 In giving liberal interpretation to a pro se civil rights

24 complaint, courts may not "supply essential elements of claims that

25 were not initially pled."  <u>Ivey v. Bd. of Regents of the Univ. of</u>

26 <u>Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory

27 allegations of official participation in civil rights violations

28 are not sufficient to withstand a motion to dismiss."  <u>Id.</u>; <u>see</u>

also <u>Jones v. Cmty. Redev. Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).  "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." <u>Jones</u>, 733 F.2d at 649 (internal quotation omitted).

Nevertheless, the Court must give a pro se litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting <u>Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir. 1995)).  Thus, before a pro se civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies. <u>Karim-Panahi</u>, 839 F.2d at 623-24.  But where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate. <u>See James v. Giles</u>, 221 F.3d 1074, 1077 (9th Cir. 2000).

C.  **<u>Stating a Claim Under 42 U.S.C. § 1983</u>**

To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C.A. § 1983 (West 2003); <u>Shah v. County of Los Angeles</u>, 797 F.2d 743, 746 (9th Cir. 1986).

### III.   DEFENDANTS' MOTION TO DISMISS

**A.   Failure to Timely Oppose**

The Court set the hearing for Defendants' Motion for June 25, 2012.  Accordingly, any opposition was to be filed no later than fourteen calendar days before the hearing, or by June 11, 2012. S.D. Cal. Civ. R. 7.1(e)(2).  Willis did not file his Opposition to Defendants' Motion to Dismiss on June 26, 2012 [ECF No. 17].  The relevant date in § 1983 cases is the date that a plaintiff delivers the documents to prison authorities ("the prison mailbox rule"). See Cromp v. Conway, No. 1:10-cv-00802-LJO-BAM PC, 2012 U.S. Dist. LEXIS 84820, at *4 n.1 (E.D. Cal. June 18, 2012) (citing Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009)).

The proof of service attached to Willis's Opposition indicates that he delivered his brief to prison authorities on June 21, 2012, ten days after the June 11, 2012 deadline.  (Opp'n 5, ECF No. 17.) Nevertheless, the Court will consider the Opposition as if it were timely filed.  See Link v. Duncan, No. C-12-0726 MMC, 2012 U.S. Dist. LEXIS 57443, at *2 n.1 (N.D. Cal. Apr. 24, 2012) (considering an opposition despite plaintiff's failure to file within the required time frame).

**B.   Eleventh Amendment Immunity**

Defendant CDCR argues that it is protected by Eleventh Amendment immunity because it is "an arm of the State of California" and, thus, immune from any action in federal court. (Mot. Dismiss Attach. #1 Mem. P. & A. 4, ECF No. 15.)  CDCR alleges that it should be dismissed with prejudice.  (Id.)

Willis counters that the Eleventh Amendment does not protect the CDCR from his lawsuit because its conduct falls into the

9

1   exception for acts that are official policy.  (Opp'n 2, ECF No.

2   17.)  He contends that the exception applies when the "execution of

3   a government policy or custom . . . inflicts the injury."  (Id.)

4   Plaintiff urges that CDCR policy falls into this exception because

5   the correctional officers "followed Alarm Response Training

6   Procedures" that demonstrate "'that deliberate indifference is a

7   persistent and widespread practice or course of action that

8   characteristically [sic] was repeated under like circumstances.'"

9   (Id. (citation omitted).)

10       The Eleventh Amendment grants the states immunity from private

11   civil suits.  U.S. Const. amend. XI; Seven Up Pete Venture v.

12   Schweitzer, 523 F.3d 948, 952 (9th Cir. 2008); Henry v. Cnty. of

13   Shasta, 132 F.3d 512, 517 (9th Cir. 1997), as amended, 137 F.3d

14   1372 (9th Cir. 1998).  A state has immunity from "'suits brought in

15   federal courts by her own citizens as well as by citizens of

16   another State.'"  Pittman v. Oregon, 509 F.3d 1065, 1071 (9th Cir.

17   2007) (quoting Edelman v. Jordan, 415 U.S. 651, 662-63 (1974)).

18   Eleventh Amendment immunity also extends to agencies and

19   departments of the state.  Pennhurst State Sch. & Hosp. v.

20   Halderman, 465 U.S. 89, 100 (1984) ("In the absence of consent a

21   suit in which the State or one of its agencies or departments is

22   named as the defendant is proscribed by the Eleventh Amendment.");

23   Brown v. Cal. Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009).

24   This immunity applies to civil rights claims brought under § 1983;

25   thus, an inmate cannot recover damages from the state unless the

26   state waives its immunity.  Will v. Mich. Dep't of State Police,

27   491 U.S. 58, 66 (1989); Barber v. Hawaii, 42 F.3d 1185, 1198 (9th

28   Cir. 1994).

"A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, __ U.S. __, 131 S. Ct. 1350, 1359 (2011). To impose liability, a plaintiff must show that the action that caused injury was made pursuant to municipal policy. (Id.) The Supreme Court, however, has held that § 1983's term "person" includes municipalities, but not states. Will v. Mich. Dep't of State Police, 491 U.S. 58, 109 (1989). Thus, "person" does not include arms of the state because Congress did not intend to abrogate sovereign immunity under § 1983. Pittman, 509 F.3d at 1072-73 (citing Will, 436 U.S. at 66).

Here, Defendant CDCR is an arm of the state and not a "person" under § 1983, so it is entitled to Eleventh Amendment immunity. Zacharie v. Cal. Dep't of Corr. & Rehab., No. CIV S-11-1466 EFB P, 2012 U.S. Dist. LEXIS 815, at *4-5 (E.D. Cal. Jan. 4, 2012) (citing Hale v. Arizona, 993 F.2d 1387, 198-99 (9th Cir. 1993)). As a result, the official policy exception does not apply because the exception is only applicable to municipalities and local governments, not the state or arms of the state. See Pittman, 509 F.3d at 1072-73. Defendant CDCR is therefore immune from suit, and its Motion to Dismiss Plaintiff's claim against it should be **GRANTED**.

## C.   Eighth Amendment:  Failure to Protect

Defendants Cerros, Navarro, and Landeros maintain that their conduct amounted to nothing more than negligence, which falls short of the required state of mind to satisfy deliberate indifference's objective prong. (Id. at 6.) As to Navarro, Defendant argues that

his actions could have prevented a larger riot on the prison yard. (<u>Id.</u>)  Additionally, Defendants insist they were acting "quickly to protect prison staff and inmates on the yard." (<u>Id.</u>)  According to Defendants, malice must be shown when prison officials respond to prison riots. (<u>Id.</u> at 6-7.)

Defendants Cerros, Navarro, and Landeros also insist that Willis only alleges legal conclusions because he does not provide any facts to support his assertions. (<u>Id.</u> at 7.)  They contend that Plaintiff has not argued they were involved in allowing only Black inmates into their cells because the tower officer, not the officers searching inmates, allows inmates to return to their cells; Cerros and Landeros were patting down inmates who entered building A-1. (<u>Id.</u>)  These three Defendants contend it is not plausible to act as a tower officer and search inmates as they enter the building. (<u>Id.</u>)

Next, Cerros, Navarro, and Landeros submit that Plaintiff fails to meet deliberate indifference's subjective prong because he does not allege the Defendants knew of an excessive risk to Willis's safety and deliberately failed to act. (<u>Id.</u> at 8 (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)).)  In fact, they state that Landeros's alleged apology contradicts any claim the Defendants were deliberately indifferent to Plaintiff's safety. (<u>Id.</u>)  Therefore, according to Defendants, the First Amended Complaint should be dismissed. (<u>Id.</u>)

In his Opposition, Willis contends that Defendants ran out of the building, which allowed a racial riot to occur between African-American and Hispanic prisoners, "knowing that there existed a strong likelihood that all unrestrained Hispanics would attack

Black inmates." (Opp'n 3, ECF No. 17.) Willis points out that he alleged in his First Amended Complaint that Defendant Navarro was the tower control officer in building A-1 who chose to cell only Black prisoners first, leaving all Hispanic inmates unrestrained, against procedure. (Id.) It was subsequently learned that the tower control officer in building A-3 had done the same. (Id.) Plaintiff argues that Defendants expected the Hispanic inmates to fight each other; instead, the Hispanic prisoners attacked the "remaining Blacks." (Id.) Willis contends that Defendant Landeros's apology "implied knowledge that an attack would occur." (Id.) "The fact that she was apologetic only makes evidence that there was no direct intent against my safety, but does not change the fact that she and [the other Defendants] knew a mass altercation was to occur." (Id.)

"[T]he treatment a prisoner receives and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). The Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" Id. at 33 (quoting Deshaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 200 (1989)). Therefore, a plaintiff has a right to be protected from violence while in custody. Farmer v. Brennan, 511 U.S. at 833; Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). "Prison officials must take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir. 1982). When the state takes a person into custody, the

13

1   Constitution imposes a duty to assume some responsibility for his

2   safety and well-being.  Deshaney, 489 U.S. at 199-200.

3       To establish an Eighth Amendment violation, a plaintiff must

4   show that the defendant acted with deliberate indifference to a

5   substantial risk of serious harm to the prisoner's safety.  Farmer,

6   511 U.S. at 834; see Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th

7   Cir. 1995); Madrid v. Gomez, 889 F. Supp. 1146, 1267-68 (N.D. Cal.

8   1995).  The prison official is only liable when two requirements

9   are met; one is objective and the other is subjective.  Farmer, 511

10  U.S. at 834; see Foster v. Runnels, 554 F.3d 807, 812 (9th Cir.

11  2009).  First, the purported violation must be objectively,

12  "sufficiently serious."  Farmer, 511 U.S. at 834 (citing Wilson v.

13  Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official

14  must subjectively "know of and disregard an excessive risk to

15  inmate health or safety."  Id. at 837.

16      **1.   Objective requirement:  sufficiently serious**

17      To establish an Eighth Amendment claim, the alleged

18  deprivation must be "objectively, 'sufficiently serious.'"  Id., at

19  834 (quoting Wilson, 501 U.S. at 298).  In cases alleging prison

20  authorities' failed to prevent harm, the inmate may satisfy the

21  "sufficiently serious" requirement by showing that "he is

22  incarcerated under conditions posing a substantial risk of serious

23  harm" to him.  Id.  Courts must consider the seriousness of the

24  potential harm and whether society deems the risk to be so grave

25  that it violates standards of decency.  Helling, 509 U.S. at 36;

26  see Hudson v. McMillian, 503 U.S. 1, 8 (1992).

27      Plaintiff alleges a sufficient risk of serious harm to

28  himself.  See Farmer, 511 U.S. at 834.  Willis argues that

Defendants Landeros and Cerros created a risk of danger when they failed to secure the podium and equipment locker containing potential weapons, which were later used by Hispanic inmates to injure Plaintiff during a racial riot. (<u>See</u> First Am. Compl. 9, ECF No. 5.) Leaving weapons readily available to inmates as a race riot erupts creates a serious risk of harm to inmates. <u>See</u> <u>Williams v. Sangha</u>, No. 12cv1449 WQH (NLS), 2012 U.S. Dist. LEXIS 105185, at *7 (S.D. Cal. July 25, 2012) (finding that plaintiff identified a serious risk when other inmates attacked him using a metal baseball bat during a riot).

Plaintiff has alleged that Defendant Navarro created a risk of serious harm. <u>See</u> <u>Farmer</u>, 511 U.S. at 834. Willis pleads that Navarro was acting as the tower guard when the riot occurred, and the Defendant was only celling Black inmates and leaving Hispanic prisoners unsecured outside their cells. (<u>See</u> First Am. Compl. 2, 9, ECF No. 5.) Plaintiff further claims that Defendant Navarro shut the door to the building, confining Willis to the building with a large group of Hispanic inmates. (<u>Id.</u> at 9.) When Defendant Navarro allowed only Black inmates into their cells, contrary to normal practice, it increased the potential for a race riot. <u>See</u> <u>Sykes v. Ryan</u>, No. CV 11-8156-PCT-RCB (MEA), 2011 U.S. Dist. LEXIS 137951, at *4-5, 8-9 (D. Az. Nov. 30, 2011) (finding that deliberate indifference was not alleged and not discussing whether a serious risk of harm to Black inmate was alleged based on the disproportionate number of white inmates on the yard); <u>see also</u> <u>Farmer</u>, 511 U.S. at 843 (stating that a prisoner may establish a serious risk of harm by demonstrating he belongs to an identifiable

1   group of inmates who is frequently singled out by other inmates for

2   attacks).

3           **2.    Subjective requirement:  deliberate indifference**

4           After an inmate has alleged that he suffered a deprivation

5   that was objectively, "sufficiently serious," he must also assert

6   that the risk to the inmate was sufficiently obvious that prison

7   officials must have been "aware of the severity of the

8   deprivation." See Thomas v. Ponder, 611 F.3d 1144, 1151 (9th Cir.

9   2010). "[D]eliberate indifference entails something more than mere

10  negligence . . . [but] is satisfied by something less than acts or

11  omissions for the very purpose of causing harm or with knowledge

12  that harm will result." Farmer, 511 U.S. at 835.  Liability

13  materializes if the defendant knew the inmate faced a risk of harm

14  and disregarded that risk by failing to take reasonable measures to

15  respond to it.  Id. at 847.

16          The subjective component of deliberate indifference involves a

17  two-part inquiry:  (1) whether the defendant was subjectively aware

18  of a risk of serious harm to the prisoner's safety and (2) whether

19  the official had a reasonable justification for the deprivation.

20  Thomas, 611 F.3d at 1150-51.

21          "First, the inmate must show that the prison officials were

22  aware of a 'substantial risk of serious harm' to an inmate's health

23  or safety." Id. at 1150 (citing Farmer, 511 U.S. at 837) (footnote

24  omitted).  This may be satisfied if the prisoner establishes that

25  the risk posed by the violation was "obvious." Id. A plaintiff

26  need not show that an "individual prison official had specific

27  knowledge that harsh treatment of a particular inmate, in

28  particular circumstances, would have a certain outcome." Id. at

                                    16

1151.  "Rather, [courts] measure what is 'obvious' in light of
reason and the basic general knowledge that a prison official may
be presumed to have obtained regarding the type of deprivation
involved."  Id. at 1151 (citing Farmer, 511 U.S. at 842).  "Second,
the inmate must show that the prison officials had no 'reasonable'
justification for the deprivation, in spite of that risk."  Thomas,
611 F.3d at 1150-51 (footnote omitted) (citing Farmer, 511 U.S. at
844).

The Court will consider the subjective component of the Eighth
Amendment inquiry as it applies to each Defendant.  See Leer v.
Murphy, 844 F.2d 628, 634 (9th Cir. 1988) (citation omitted) ("The
prisoner must set forth specific facts as to each individual
defendant's deliberate indifference.").

### a.   Defendants Cerros and Landeros

Plaintiff pleads that these Defendants failed to secure the
equipment locker and a center podium before responding to the
alarm.  (First Am. Compl. 9, ECF No. 5.)  Their actions, he claims,
created a serious risk of harm because the inmates had access to
items that were ultimately used as weapons.  (Id.)  As a result,
Willis was attacked by forty armed Hispanic prisoners for ten
minutes before guards reentered the building.  (Id.)  Sometime
after the riot, Plaintiff alleges that Landeros apologized to a
group of Black inmates and stated that "we" thought the Hispanic
inmates would fight among themselves, not attack Blacks.  (Id.)

Willis must allege that Defendants were aware of a
"substantial risk of serious harm" to his safety.  Thomas, 611 F.3d
at 1150.  Deliberate indifference requires an actual perception of
risk.  Bonty v. Ramsey, No. C 10-5360 LHK (PR), 2011 U.S. Dist.

17

1   LEXIS, at *16 (N.D. Cal. Dec. 19, 2011); see also Farmer, 511 U.S.

2   at 836 & n.4.

3       The standard does not require that the guard or official
        "'believe to a moral certainty that one inmate intends to
4       attack another at a given place at a time certain before
        that officer is obligated to take steps to prevent such
5       an assault.  But, on the other hand, he must have more
        than a mere suspicion that an attack will occur.'"

6

7   Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (quoting State

8   Bank of St. Charles v. Camic, 712 F.2d 1140, 1146 (7th Cir. 1983)).

9   Advance notification is not a necessary element of an Eighth

10  Amendment failure-to-protect claim.  Farmer, 511 U.S. at 849.

11      Defendants claim that Plaintiff must allege and prove malice

12  in the prison riot setting.  (Mot. Dismiss Attach. #1 Mem. P. & A.

13  6, ECF No. 15.)  The Ninth Circuit, however, has concluded that

14  whether the defendant's conduct was "malicious" is the standard for

15  imposing liability where a prison guard's use of force to quell a

16  riot is at issue.  Redman v. Cnty. of San Diego, 942 F.2d 1435,

17  1441-42 (9th Cir. 1991) (citing Whitley v. Albers, 475 U.S. 312,

18  320-21 (1986)).  Here, the conduct in question is the Defendants'

19  inaction, not their use of force, so the deliberate indifference

20  standard applies.  Id.; see also Berg v. Kincheloe, 794 F.2d at 461

21  (explaining that deliberate indifference applies to the

22  "unprevented attack").

23      Plaintiff alleges sufficient facts to show that Defendants

24  Cerros and Landeros were aware that leaving the podium and

25  equipment locker unsecured – full of potential weapons – would pose

26  a substantial risk of serious harm to Willis's safety.  See Thomas,

27  611 F.3d at 1150-51.  Failing to lock an area containing brooms,

28  mops, and razor blades in a prison when the inmates were being

18

searched while entering the building from the exercise yard would create an obvious risk that unrestrained or uncelled inmates could use the items as weapons.  See id. at 1151 (explaining that in determining whether a risk to an inmate's health is obvious, a prison official is deemed to have the general knowledge of an individual performing the functions of that job).  Willis further alleges that the proper procedure was to secure the areas before permitting inmate movement from the recreation yard.  (See First. Am. Compl. 9, ECF No. 5.)

Landeros's alleged apology is some support for the claim that she and Defendant Cerros were aware of a substantial risk of serious harm.  See Armstrong v. Smalls, No. 11-0401-WQH-WVG, 2011 U.S. Dist. LEXIS 133757, at *22-24 (S.D. Cal. Aug. 22, 2011) (finding plaintiff stated a claim when defendants knew of an impending attack); see also Swan v. United States of America, 159 F. Supp. 2d 1174, 1182 (N.D. Cal. 2001) ("[T]urning a blind eye to the relevant surrounding facts will not shield a prison official from liability.").

Next, Plaintiff must show that Defendants Landeros and Cerros had no "reasonable" justification for their actions.  Thomas, 611 F.3d at 1150-51.  The reasonableness of their conduct must be considered in light of their alleged knowledge that leaving unsecured items could result in an altercation.  (See First Am. Compl. 9, ECF 50.)  Willis alleges that both Landeros and Cerros were conducting a "boot check" next to the unsecured podium and equipment locker, and that they rushed, without securing the podium or equipment locker containing broom sticks, mops, and razor

blades.  (Id. at 8-9.)  Indeed, Defendants' responses to the developing riot on the yard may have been reasonable.

The facts in the First Amended Complaint sufficiently allege that Defendants had no reasonable justification for their pre-riot failures to secure potential weapons before conducting boot checks of out-of-cell inmates.  See Page v. Horel, No. C 09-289 MHP (pr), 2011 U.S. Dist. LEXIS 3090, at *8 (N.D. Cal. Jan. 12, 2011) (finding that deliberate indifference was alleged when defendant allowed an active gang member to go through the security door and run into the yard when prison procedure was to lock down gang member inmates before opening security doors).  Willis pleads facts demonstrating that Defendants knew, prior to the riot on the yard, that any racial imbalance as to celled prisoners could result in physical altercations.  (See First Am. Compl. 9, ECF No. 5.)  Also, Defendants elected not to secure potential weapons that were later used in an altercation.  The Motion to Dismiss the failure-to-protect claims against Landeros and Cerros should be **DENIED**.

### b.   Defendant Navarro

Plaintiff argues that Defendant Navarro was acting as an "A-1 control tower" officer and celled only Blacks before celling the Hispanics, contrary to normal procedure.  (First Am. Compl. 2, 8, ECF No. 5.)  He urges that correctional officers lock up inmates by section, not race, because locking up one race at a time creates "ideal" riot conditions.  (Id. at 8)  Defendant Navarro also shut the door to the building to prevent inmates from entering the yard to join the riot.  (Id. at 8-9.)  Plaintiff's claim is that Navarro knew a large altercation was about to occur and was deliberately indifferent to Willis's personal safety.  (Id. at 10.) As alleged,

the practices and procedures Plaintiff describes indicate that the risk to inmates would be obvious when one racial group is placed in their cells and another group is not celled. See Thomas, 611 F.3d at 1151 (explaining that in determining whether a risk to an inmate's health is obvious, a prison official is deemed to have the general knowledge of an individual performing the functions of that job). Willis's pleading suggests that Navarro would have known that creating a racially imbalanced lockup would create an obvious risk to Plaintiff, who was one of the few Black inmates who were not celled and was attacked by forty Hispanics who were also not celled. Navarro subsequently closed the building door, confining Willis with the unrestrained, armed Hispanics.

The Plaintiff has also alleged that Navarro did not have a reasonable justification for celling the inmates by race. See Thomas, 611 F.3d at 1150-51 (footnote omitted). Defendant Navarro does not provide any rationale for deviating from the normal procedure and celling Black prisoners first, leaving all Hispanic inmates unsecured. Defendant Navarro's Motion to Dismiss the failure-to-protect cause of action against him should be **DENIED**.

### IV. CONCLUSION

For the reasons described, Defendant CDCR's Motion to Dismiss on Eleventh Amendment immunity grounds should be **GRANTED**. Defendants Cerros, Landeros, and Navarro's Motion to Dismiss the Eighth Amendment claims against them should be **DENIED**.

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or

before October 15, 2012.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed on or before October 29, 2012. The parties are advised that failure to file objections within the specified time  may waive the right to appeal  the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**


DATE:  September 13, 2012

RUBEN B. BROOKS
United States Magistrate Judge

cc:  Judge Burns
     All Parties of Record