# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEE A. WILLIS,<br><br>           Plaintiff,<br>vs.<br><br>MS. MCEWEN, et al.,<br><br>           Defendant. | CASE NO. 11cv1683-LAB (RBB)<br><br>**ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION; AND**<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

This case arises from a disturbance at the state prison where Plaintiff Rachee Willis was housed. While prisoners were being brought back into prison housing, a riot broke out involving black and Hispanic inmates. During the disturbance, Willis, who is black, was attacked by Hispanic inmates and injured. Defendants filed a motion for summary judgment (the "Motion"), which was referred to Magistrate Judge Ruben Brooks for report and recommendation. On February 20, 2014, Judge Brooks issued his report and recommendation (the "R&R"), which made factual findings and recommended denying the motion. Neither Plaintiff nor Defendants filed objections to the R&R.

**Legal Standards**

A district court has jurisdiction to review a magistrate judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly

objected to." Id. "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). This section does not require some lesser review by the district court when no objections are filed. *Thomas v. Arn*, 474 U.S. 140, 149-50 (1985). *See also Orand v. United States*, 602 F.2d 207, 208 (9th Cir. 1979) ("If neither party contests the magistrate's proposed findings of fact, the court may assume their correctness and decide the motion on the applicable law.")

The R&R correctly sets forth the legal standards governing both summary judgment and Plaintiff's claims. The Court also adds that a motion for summary judgment must be resisted by showing there is evidence that would be admissible at trial, which creates a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(e). This can be met by presenting evidence that would be admissible at trial, *see Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir .2002), or by pointing to facts or evidence that could be presented in admissible form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (facts in verified pleadings that a party would be competent to testify to can be used to resist summary judgment). But evidence that is not admissible and could not be presented at trial in admissible form is not enough to resist summary judgment. *See Orr*, 285 F.3d at 773; *Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir.1996) (speculation is insufficient to create a genuine issue of material fact); *Anheuser–Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1995) (conclusory or speculative testimony is insufficient to defeat summary judgment)

It also bears mention that, although Willis is proceeding *pro se* and bringing civil rights claims, and is therefore entitled to liberal construction of his pleadings, *see Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1998), he must still follow the same rules of procedure that govern other litigants. *See  King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987). He was provided notice pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988). (*See* Docket no. 35.) He / / /

was also afforded an opportunity to take discovery, and did not object to any of Magistrate Judge Brooks' rulings on discovery issues.

**Discussion**

The R&R's factual findings were based on the evidence presented in favor of or in opposition to the Motion and on uncontested facts. Because neither party has objected to these, the Court **ADOPTS** them and will treat them as correct for purposes of the motion.

### Which Claims Are Brought Against Which Defendants

The amended complaint ("FAC") brings two general claims, both based on Willis' Eighth Amendment rights. The first is that all three Defendants were responsible for leaving open an equipment locker, allowing other inmates to gain access to its contents (mops, brooms, and razors), which could be used as weapons. In fact, there are no allegations suggesting in any way that Navarro was responsible for monitoring the cabinet, or that he in fact left it open. This claim is properly construed as being brought against Cerros and Landeros only. The R&R so construes it, and neither party has objected to this construction.

The second claim was brought against the California Department of Corrections and Rehabilitation (CDCR) only, for allowing the riot to happen, in which Willis was attacked and injured by other inmates. The CDCR has been dismissed as a party, but the FAC as a whole shows that Willis thinks Defendant Navarro was responsible for this. The R&R so construes the FAC, and neither party has objected to this interpretation. The FAC does mention Defendants Cerros and Landeros as playing some role in the riot or in failing to keep Willis safe during it. The R&R doesn't identify which Defendants this claim is against, but the factual findings show Cerros and Landeros played only a minor role in keeping prisoners safe in the time leading up to and during the riot. The R&R says they were at the podium, conducting "boot checks" of inmates coming in from the yard, and played no other role until a riot broke out in the yard and they ran outside to help bring it under control. (R&R, 3:6–4:2.) Although Willis might blame all three Defendants for leaving him alone in the building with forty to fifty unrestrained Hispanic inmates (R&R, 5:13–16), the facts make clear Landeros and Cerros only left the building to deal with the riot outside. They are not

alleged to have been responsible for organizing the return of inmates to their cells, or (except for leaving the equipment locker unsecured), for creating any conditions that were dangerous to Willis. By contrast, Defendant Navarro was the one deciding which inmates would be returned to their cells, and in which order, and Willis claims this was done in such a fashion that an inter-ethnic riot was likely to occur. (R&R, 5:11–13.) It is therefore clear the second claim can only properly be brought against Defendant Navarro.

**Analysis of Claim Against Defendants Landeros and Cerros**

Willis claims Landeros and Cerros left both the equipment locker and a razor cabinet open. Accepting this as true, as the Court does at the summary judgment stage, it is important to point out that Willis says he was attacked with the base of a telephone, and with a "large stick" — not a razor. Leaving the razor cabinet open did not cause Willis' injuries, and the telephone he was hit with did not come from either cabinet. The "large stick" is more of a quandary because there was no evidence it was a broomstick or mop stick, or if it was, that it came from the open equipment locker rather than somewhere else. Causation is therefore a problem for Willis, because deliberate indifference that does not result in harm is not actionable, nor are defendants in § 1983 actions liable for harm caused by others' actions or inactions. *See Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (emphasizing the importance of individualized inquiry into causation in § 1983 actions).

Assuming, *arguendo*, Willis could show one of the weapons he was attacked with was the stick of a mop or broom taken from the equipment locker, Cerros and Landeros have raised the defense of qualified immunity. The R&R discusses the legal standard for this defense but finds these Defendants are not entitled to its protection. In this situation, the defense also implicates some of the "deliberate indifference" analysis. As the R&R correctly notes, Willis must show more than mere negligence to prevail — he must show deliberate indifference to a serious risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). What is more, the Defendants must have been subjectively aware of the risk, and ignored it. *Id*. at 837; *Jeffers v. Gomez*, 267 F.3d 895, 913 (9th Cir. 2001).

Here, the equipment locker that the stick <u>may</u> have been taken from presented some danger, but it is clear the equipment kept in it was routinely used by the inmate porter, who has cleaning duties. The undisputed evidence shows that the inmate porter was still carrying out his duties, and thus the equipment locker was still open when prisoners were being brought in from the yard.

Defendants also presented evidence of the time sequence of events leading up to the riot in the yard. (Motion at 3:23–15; R&R at 11:23–28.) At approximately 10:15 a.m., the inmates began coming back into the housing unit from the yard. Shortly after that, heavy rain began, resulting in poor visibility, and there were some lightning strikes. Because of that, there was an emergency recall at approximately 10:30 and all inmates were required to return from the yard into their housing units. Because of the rain, the inmates began entering the housing unit quickly and congregating near the door. Then at approximately 10:38, Defendants heard an announcement that a Code 2 riot was occurring in the yard, and almost immediately after that, it escalated to a Code 3, which is the highest level and indicates a life-threatening emergency.

Willis' claim is that Cerros and Landeros could and should have locked the equipment locker sometime between 10:15 and 10:38, and that failure to do so was deliberate indifference. Cerros and Landeros presented uncontroverted evidence, however, that prison protocol dictated that the equipment locker remain open while the inmate porter was cleaning. (R&R, 20:6–8), or at least, that they had discretion to allow the inmate porter to leave it open. (*Id.*, 20:21–25.) Willis alleges that prison procedures require that the locker be kept closed in order to prevent prisoners from using the cleaning tools as weapons, and alleges that Landeros and Cerros violated this by failing to secure the locker while prisoners were coming into the housing unit. (R&R, 4:20–25.)

But Willis' evidence[1] has a gap in it, and fails to prove his claim. Accepting as true that both Landeros and Cerros knew the locker's contents should be secured, and that they didn't

---

[1] For purposes of ruling on the Motion, the Court assumes that Willis could competently testify as to the protocol to be followed respecting the equipment locker.

1  actually do so is part of the case Willis must put on, it still isn't sufficient. Willis has to
2  establish deliberate indifference, and must also get past the qualified immunity defense.
3  Here, even assuming that leaving the equipment locker open at that time was irregular, there
4  was initially no reason to think the mops and brooms would be taken and used as weapons
5  while prisoners were entering the housing unit, because Landeros and Cerros were present
6  and able to prevent that from happening.  The R&R, however, concluded that a finder of fact
7  could have found they acted unreasonably in leaving the locker open so that the inmate
8  porter could clean, in light of the fact that the mops and brooms could be used as weapons
9  during a riot. (R&R, 21:25–3.) This assumes deliberate action on their parts, however, and
10 applies an inappropriately low standard.

11         There is no evidence that either guard deliberately ignored a known risk.  Even if
12 Cerros and Landeros were unreasonable or negligent in leaving the locker open while they
13 were present, their actions would not rise to the "deliberate indifference" level. Cerros and
14 Landeros also correctly argue they would be entitled to qualified immunity on this point,
15 because no case law holds that prison officers' leaving an equipment locker open while they
16 are present is unreasonably dangerous or amounts to deliberate indifference.

17         The R&R also doesn't address the emergency situation that was caused by the
18 sudden, unexpected heavy rain and lightning. No evidence suggests Cerros or Landeros
19 anticipated this, or the attendant problems of poor visibility in the yard and prisoners hurrying
20 in out of the rain and congregating near the door.

21         Second, the R&R doesn't adequately distinguish between the riot in the yard (which
22 Cerros and Landeros couldn't see or anticipate) and the attack in the housing unit, and also
23 between what each of these two Defendants knew and what was known by other officers.
24 Cerros and Landeros were conducting "boot checks" at the podium, and might have seen
25 how prisoners were being returned to cells, as Willis did. (R&R, 3:7–20.) This <u>might</u> have led
26 them to expect a disturbance in the housing unit. But in this case, that's not where the riot
27 began; it began outside, in the yard, and there is no evidence Cerros and Landeros had an
28 reason to know that would occur. The possibility that other officers might have known a riot

1  would occur in the yard does not help Willis, because each Defendant's actions are analyzed
2  individually, *Leer,* 844 F.2d at 633, and the reasonableness of each Defendant's actions is
3  analyzed from the point of view of that Defendant. *See Graham v. Connor*, 490 U.S. 386,
4  396 (1989) (for qualified immunity purposes, officer's reasonableness "must be judged from
5  the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of
6  hindsight").

7  When the riot broke out in the yard and the alarm was sounded, Landeros and Cerros
8  were required to leave their post and run outside to respond. When they did so, a group of
9  prisoners ran out into the yard to participate in the riot, and Defendant Navarro closed the
10 door to prevent this.[2] (R&R, 3:23–4.) Only then did the Hispanic prisoners begin to attack the
11 black inmates indoors. (*Id*., 4:4–13.) Willis was injured in this secondary attack. But there is
12 no evidence suggesting Cerros and Landeros knew they were going to be called away
13 suddenly, leaving the equipment locker unattended and creating a hazard during the
14 secondary attack.

15 The R&R's qualified immunity analysis is also incomplete in that it fails to consider
16 that Cerros and Landeros were acting quickly under emergency circumstances. The Motion
17 makes this argument, (Motion, 16:3–18), and it is well-taken. The qualified immunity analysis
18 is conducted in light of the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 202
19 (2001). The analysis is undertaken from the point of view of Landeros and Cerros,
20 individually, in the situation where they found themselves. *See Graham*, 490 U.S. at 396. In
21 these circumstances, Landeros and Cerros could reasonably have left the locker open to
22 allow the inmate porter to continue cleaning. And when the riot broke out in the yard and
23 escalated to Code 3 (a life-threatening situation), they were not unreasonable in immediately
24 leaving their posts and running out into the yard without delay to help, even though this
25 meant leaving the locker unsecured and unattended.

26 / / /

27

28 [2] Because Navarro was in the tower at the time, apparently he closed it remotely. (R&R, 3:20–22, 4:2–4.)

The Court therefore rejects the R&R's analysis of this claim, and finds that Cerros and Landeros are entitled to summary judgment, both because there is insufficient evidence to establish causation and deliberate indifference, and because they are entitled to qualified immunity.

**Analysis of Claim Against Defendant Navarro**

The Court has reviewed the R&R and finds its analysis to be generally correct. The only point the Court would change is its analysis of a remark Landeros supposedly made when apologizing to inmates: "I'm so sorry, I had no idea [the Hispanic prisoners] were going for you guys, we thought they were going to fight each other." (R&R, 4:25–5:2; 16:16–19.) Landeros denies saying this. The R&R discusses the probative value of this, if offered to show Defendants knew a riot was likely. This statement is thin at best, because the time frame and location aren't clear. In other words, it is ambiguous whether the remark refers to the attack indoors or the riot outdoors, or whether Landeros meant they anticipated the attack well in advance, or moments beforehand when there was no reasonable chance to respond. Bearing in mind she denied saying this at all and therefore did not explain what it meant, there is no factual basis from which to infer its meaning. Speculation about what it meant is not enough. Furthermore, even if Landeros said it, and even if it means Landeros anticipated the attack well in advance, the remark at most admits awareness of a danger to other inmates (the Hispanic inmates), not Willis. This doesn't amount to evidence that Landeros subjectively thought Willis and other black inmates were in any serious danger.

But more to the point, this statement is inadmissible hearsay if offered against anyone other than Landeros herself.[3] *See* Fed. R. Evid. 801. The claim against Landeros is being dismissed, so it will not come in at all. But even if Landeros were still in the case, this remark could not be used to show that Navarro knew a riot was likely. Although the R&R says Defendants did not object to this remark's admissibility (R&R, 18:1–3), in fact the Motion did

/ / /

---

[3] It might also be admissible against the CDCR, *see* Rule 801(d)(2)(D), but the CDCR has already been dismissed.

point out the remark didn't show either Cerros or Navarro knew about the riot before it occurred. (Motion, 11:5–7.)

This clarification does not, however, change the outcome. Willis has offered his own testimony that the manner in which inmates were returned to their cells was highly unusual, and that it was common knowledge that racially motivated riots and attacks were common in circumstances such as these. As a prisoner, Willis has some basis for such testimony, and a jury could reasonably infer from this that Navarro knew of a serious risk of a riot, and of harm to the prisoners there (including Willis), and that he could have minimized or eliminated the risk.

**Conclusion and Order**

The R&R is modified as discussed above, and so modified, it is **ADOPTED**. The Court **GRANTS** summary judgment as to the claim against Cerros and Landeros, and the claim against them is **DISMISSED WITH PREJUDICE**. Because there are no claims pending against them, they are **DISMISSED AS PARTIES**.

Currently on calendar for Monday, April 14, 2014 is the pretrial conference in this case. The conference will remain on calendar, but Cerros and Landeros need not attend or participate. Defendants' counsel need not submit a revised proposed pretrial order at this time.

**IT IS SO ORDERED**.

DATED: April 10, 2014

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge